## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARQUICE DONNELL SAVAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-0126-CVE-CDL |
| | ) | |
| VIC REGALADO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Marquice Donnell Savage, appearing pro se and <u>in</u> <u>forma</u> <u>pauperis</u>, brings this civil action to vindicate alleged violations of his civil rights that occurred while he was detained at the David L. Moss Criminal Justice Center in Tulsa, Oklahoma ("the Tulsa County Jail"). Before the Court are three motions filed by defendants Vic Regalado, Shyanne Dobbertin, and Aaliyah Sanchez (collectively, "movants"):  a motion to dismiss (Dkt. # 37); a motion to strike documents (Dkt. # 48); and a motion to stay (Dkt. # 49).  For the following reasons, the Court grants the motion to strike documents, grants in part and denies in part the motion to dismiss, and denies as moot the motion to stay.

## I.      Procedural background

Savage initially brought this action against five defendants:  (1) the Tulsa County Sheriff's Office; (2) Tulsa County Sheriff Vic Regalado; and three detention officers employed by the Tulsa County Sheriff's Office (3) FNU Edwards, (4) Shyanne Dobbertin, and (5) Aaliyah Sanchez.  Dkt. # 1, at 1-4.  The Court dismissed the Tulsa County Sheriff's Office as an improper defendant and construed the complaint as asserting claims that Dobbertin, Sanchez, and Edwards conspired to violate and violated Savage's Fourteenth Amendment right to due process by using excessive force

against him while he was detained at the Tulsa County Jail awaiting trial in state court, and that Sheriff Regalado should be held liable for the alleged misconduct of the detention officers.  Dkt. # 13, at 2-3; Dkt. # 35, at 1.[1]

The Clerk of Court issued summonses on August 7, 2023.  Dkt. # 25.  One week later, Savage filed a motion to amend, seeking leave add a new defendant, "a Deputy Sheriff named 'Diaz'" whom Savage identified as also involved in the alleged use of excessive force.  Dkt. # 28.  Movants were served a copy of the complaint on August 8, 2023.  Dkt. # 29.  The summons for Edwards was returned unexecuted with a note that Edwards could not be located at the address Savage provided.  Dkt. # 30.  In an order filed August 31, 2023, the Court granted Savage leave to file an amended complaint.  Dkt. # 35.

Savage filed an amended complaint on September 11, 2023, making several revisions and adding two new defendants, Diaz and Tulsa County.  Dkt. # 37.  With the amended complaint, Savage submitted two summonses, one for Edwards and one for Diaz, but he did not submit a summons for Tulsa County.  Dkt. # 38.  Two weeks later, movants filed a motion to dismiss the amended complaint.  Dkt. # 40.  Savage filed a response in opposition to the motion to dismiss and a "supplement" to the amended complaint clarifying that Sheriff Regalado was part of the alleged conspiracy to violate Savage's federal rights.  Dkt. ## 41, 42.  Movants filed a reply brief.  Dkt. # 43.  Savage subsequently filed two supplemental briefs, docketed as surreplies, responding to the dismissal motion.  Dkt. ## 44, 45.  Movants filed a motion to strike the surreplies and a motion to stay this action pending this Court's ruling on the dismissal motion.  Dkt. ## 48, 49.  Savage filed a response in opposition to the motion to strike but did not respond to the motion to stay.  Dkt. # 50.

---

[1] For consistency, the Court's citations refer to the CM/ECF header pagination.

## II.   Motion to strike

Movants ask this Court to strike Savage's surreplies as improper, unauthorized, and untimely.  Dkt. # 48.  Savage urges the Court to deny the motion to strike, arguing that the rule of liberal construction requires this Court to view his pleadings with leniency because he appears without counsel.  Dkt. # 50.

Savage is correct that courts must liberally construe pleadings drafted by self-represented litigants.  Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But even self-represented litigants must comply with applicable procedural rules.  See Ogden, 32 F.3d at 455 ("While [courts] of course liberally construe pro se pleadings, an appellant's pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992) ("Although we construe [the plaintiff's] pleadings liberally because he is a pro se litigant, he nevertheless must follow the same rules of procedure that govern other litigants.").  And, as movants contend, this Court's local civil rules discourage the filing of supplemental briefs and provide that they "may be filed only upon motion and leave of Court."  LCvR7-1(f).  Because Savage neither sought nor obtained leave of Court before filing his surreplies, the Court grants the motion to strike and orders that both surreplies be stricken.  See Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D. N.M. 2009) (explaining that FED. R. CIV. P. 12(f) governs motions to strike "pleadings" and acknowledging that "briefs" generally may not be attacked by a motion to strike, but stating that a court nonetheless has discretion "to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court" (citation omitted)).

## III.     Motion to dismiss

Relying on Federal Rule of Civil Procedure 12(b)(6), movants seek dismissal of all claims asserted against them in the amended complaint.  Dkt. # 40.  Dismissal of claims under Rule 12(b)(6) is appropriate if the facts alleged in the complaint fail to state a claim on which relief may be granted.  To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim.  Id. at 556; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  Bell Atl. Corp., 550 U.S. at 555.  When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded factual allegations and construe them in the plaintiff's favor.  Id.  But the court may disregard legal conclusions or conclusory statements devoid of factual support.  Id.; Iqbal, 556 U.S. at 678.

Further, as previously discussed, when a plaintiff appears without counsel, the court must liberally construe the complaint.  Hall, 935 F.2d at 1110.  But even self-represented litigants bear the burden to "alleg[e] sufficient facts on which a recognized legal claim could be based."  Id.  This is so because the facts giving rise to the plaintiff's claims should be known to the self-represented plaintiff even if the plaintiff lacks knowledge of the specific legal theories that support his or her claims.  The rule of liberal construction merely aids the self-represented plaintiff by permitting the court to overlook basic drafting errors and confusion of legal theories in determining

whether the factual allegations in the complaint can be "reasonably read . . . to state a valid claim on which the plaintiff could prevail." Id. At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting Bell Atl. Corp., 550 U.S. at 556). Nonetheless, dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Bell Atl. Corp., 550 U.S. at 558.

### A. Amended complaint

Savage identifies six defendants in the amended complaint: (1) Tulsa County; (2) Sheriff Regalado; (3) Dobbertin; (4) Edwards; (5) Sanchez; and (6) Diaz. Dkt. # 37, at 1-5. He purports to assert individual capacity and official capacity claims against each defendant. Id.

### 1. Allegations

Savage alleges that Edwards responded to Savage's unit at the Tulsa County Jail, on April 18, 2021, to investigate "a verbal confrontation between [Savage] and another inmate." Id. at 10. Edwards told Savage to put his hands behind his back, and Savage complied. Id. Edwards handcuffed Savage and escorted him out of the unit. Id. Edwards "falsely accused" Savage of "threatening another prisoner." Id. As Edwards escorted Savage down the hallway to segregated housing, Savage complained "that [he] was in pain because [he] had broken [his] left ankle a few years ago" and "had a plate and screws in [his] leg and ankle." Id. Edwards "neglected [Savage's] pain," stating, "I don't care," and "walk faster." Id. When Savage responded that he could not walk faster, Edwards "grabbed [Savage] by [his] left arm and started pulling" him, increasing Savage's left ankle pain. Id. Savage pulled his left arm away from Edwards and "begged" Edwards to stop. Id. In response, Edwards lifted Savage—who was handcuffed—and forcefully

5

"slammed" him onto the "hard floor."  Id. at 6, 10-11.  Edwards then placed his hands around Savage's neck and began "choking" him and "cutting off [his] air supply."  Id. at 6, 11.

Dobbertin, Diaz, and Sanchez "came running up the hall."  Id. at 11.  All four detention officers "violently" lifted Savage from the floor and "dragged [him] down the hallway like an animal causing extreme unbearable pain to [his] left ankle and to both of [his] arms and wrists." Id. at 11.  Savage experienced "severe pain" from being dragged while in handcuffs.  Id. at 6, 11. All four detention officers forced Savage into a holding cell, left him in "too tight" handcuffs for several hours with no ability to use the bathroom, and ignored his complaints that he "had trouble breathing" and needed "medical attention."  Id. at 6, 11-13, 16.  Savage later "received a disciplinary write-up for this incident [from] Edwards" for allegedly "hindering an officer in the performance of his duties."  Id. at 7.

Savage alleges that Sheriff Regalado is responsible for managing and maintaining the Tulsa County Jail.  Id. at 7.  Savage further alleges that Regalado "has the option to hire people who ha[ve] limited certifications to carry out his duties throughout the jail" and that Regalado "has opted to hire officers called detention officers and deputy sheriffs to carry out his duties."  Id. at 7-8.  Savage also alleges that Regalado "has willfully, knowingly, and intentionally refused to perform his duty to defend the United States Constitution and [l]aws of [Oklahoma]."  Id. at 8. Finally, Savage alleges that Regalado "has maintained a practice of willfully refusing to perform his required duties," "for his own personal gain," resulting in "a conspiracy," "a criminal enterprise," "discrimination based on [Savage's] race [and] color," and a deprivation of Savage's "equal rights under the law."  Id. at 14.

2.      **Claims**

As movants aptly note, the amended complaint is drafted in a manner that makes it "difficult" for movants (and the Court) "to know what claims are being asserted." Dkt. # 40, at 12. In the section of the amended complaint that asks Savage to identify "what federal constitutional or statutory rights" he claims were violated by defendants' alleged actions, Savage lists the following: (1) 42 U.S.C. § 1981(a) and (c); (2) the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; (3) 42 U.S.C. § 1985(3); and (4) Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000a through 2000a-6. Dkt. # 37, at 5, 15. In addition, within the margins of the same page, Savage lists several provisions of state law. Id. at 5, 15. In other portions of the amended complaint, Savage appears to reference violations of state law only to support his "explanation of how each defendant acted under color of state or local law." Id. at 6-9, 15. In those same sections of the amended complaint, Savage commingles factual allegations with conclusory allegations about the federal and state laws and federally protected rights that defendants allegedly violated. Id. at 6-9, 15. Savage then identifies four numbered claims, all of which allege violations of federal law, in the sections of the amended complaint that he describes as his "Statement of Claim." Dkt. # 37, at 6-16.

Giving Savage the benefit of liberal construction that he is entitled to as a self-represented litigant, the Court construes the amended complaint as asserting the following federal claims:

(1) Edwards, Dobbertin, Sanchez, and Diaz used excessive force against Savage, in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, id. at 6-7, 10-13;

(2) Edwards, Dobbertin, Sanchez, and Diaz used excessive force against Savage thereby depriving him of equal protection of the law, in violation of 42 U.S.C. § 1981(a) and the Fourteenth Amendment, id. at 6-7;

(3) all defendants conspired to deprive Savage of his civil rights, in violation of 42 U.S.C. § 1985(3), id. at 8-9, 14; and

7

(4) Sheriff Regalado discriminated against Savage based on race, in violation of § 1981(a), his Fourteenth Amendment right to equal protection of the laws, and Title II of the Civil Rights Act of 1964, id. at 8-9, 14.

### 3.    Injuries and requested relief

Savage alleges that he suffered visible bruises, a swollen ankle, and difficulty breathing after being slammed to the ground and having the "wind knocked out of him." Id. at 11, 16. Savage further alleges that, as of September 2023, he was taking pain medication for his injuries. Id. Savage seeks one hundred million dollars in actual damages and ten million dollars in punitive damages. Id.

### B.    Discussion

Movants contend the amended complaint should be dismissed for five reasons. First, they contend that the facts alleged in the amended complaint are not sufficient to state any plausible official capacity claims against them. Dkt. # 40, at 4-5. Second, they contend that the amended complaint fails to state any plausible claims against Sheriff Regalado in his individual capacity. Id. at 4-5. Third, they contend that the facts alleged in the amended complaint are not sufficient to state a plausible conspiracy claim under § 1985(3). Id. at 5-6. Fourth, they contend that Dobbertin and Sanchez have qualified immunity as to any claims asserted against them in their individual capacities. Id. at 6-11. Fifth, they contend that, to the extent Savage asserts additional claims against them that they have not addressed in the dismissal motion, they cannot respond to

those additional claims because the amended complaint fails to comply with Federal Rule of Civil Procedure 8(a)'s basic pleading requirements. Id. at 12-13.[2]

As further discussed below, three defendants—Tulsa County, Edwards, and Diaz—have not been served. However, because Savage appears in forma pauperis, this Court has a continuing obligation to dismiss the amended complaint, in whole or in part, "at any time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether dismissal is appropriate under § 1915(e)(2)(B)(ii), the Court applies the same standards used to evaluate the sufficiency of a complaint as challenged by a Rule 12(b)(6) motion. Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007). The Court therefore will consider not only whether movants have identified any bases for dismissal of the claims against them, but also whether any claims against the unserved defendants should be dismissed under § 1915(e)(2)(B)(ii).

### 1. Tulsa County

As previously discussed, Savage added Tulsa County as a new defendant in the amended complaint. The Court finds, however, that Tulsa County shall be dismissed, with prejudice, from this action. As this Court stated in its prior order, it is not necessary to sue Tulsa County because Savage has effectively sued Tulsa County by asserting claims against Sheriff Regalado in his official capacity. Dkt. # 13, at 3; Burke v. Regalado, 935 F.3d 960, 988 (10th Cir. 2019); see Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of Cleveland Cnty., 237 P.3d 134, 142 (Okla. 2010) (explaining that, "[u]nder Oklahoma law, the sheriff is the final policymaker for a

---

[2] Movants also assert that Savage improperly listed the Tulsa County Sheriff's Office as a party in the amended complaint after this Court dismissed the Sheriff's Office as an improper party. Dkt. # 40, at 13. Contrary to this assertion, Savage did not list the Sheriff's Office as a defendant in the amended complaint. Instead, he identified Tulsa County as a new defendant in the amended complaint. Dkt. # 37, at 1-5.

county jail," and is responsible for providing medical care to those in custody at the county jail, and that a board of county commissioners "has no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies"). Savage's claims relate to his treatment at the Tulsa County Jail, and, as the final policymaker for the Jail, Sheriff Regalado is the proper official to sue to the extent Savage contends Tulsa County is liable for the civil rights violations alleged in the amended complaint. The Court therefore dismisses Tulsa County from this action, with prejudice, and directs the Clerk of court to terminate Tulsa County as party defendant.

### 2. § 1985(3) conspiracy claim

Savage claims that Sheriff Regalado and all four detention officers conspired to violate his civil rights and deprive him of equal protection of the law, in violation of § 1985(3), and that all four detention officers acted on that conspiracy by using excessive force against him. Movants contend that the facts alleged in the amended complaint fail to state a plausible conspiracy claim.

As relevant here, § 1985(3) "provides a right of action '[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws.'" Jones v. Norton, 809 F.3d 564, 578 (10th Cir. 2015) (quoting 42 U.S.C. § 1985(3)). To state a plausible claim for relief under § 1985(3), a plaintiff must allege facts showing "(1) the existence of a conspiracy; (2) intended to deny him equal protection under the laws or equal privileges and immunities of the laws; (3) resulting in an injury or deprivation of federally-protected rights; and (4) an overt act in furtherance of the object of the conspiracy." Jemaneh v. Univ. of Wyo., 82 F. Supp. 3d 1281, 1306 (D. Colo. 2015); see also Dixon v. City of Lawton, 898 F.2d 1443, 1447-48 (10th Cir. 1990) (noting that "a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws" and

comparing elements of § 1985(3) claim with elements of § 1983 claim).  To satisfy the second element, a plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Jones, 809 F.3d at 578 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Dixon, 898 F.2d at 1447-48 ("A § 1985(3) private conspiracy motivated by racial concerns 'must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" (quoting Griffin, 403 U.S. at 102).  Liberally construing the amended complaint, accepting Savage's factual allegations as true, and disregarding his unsupported conclusory allegations of "discrimination," the Court agrees with movants that Savage fails to plausibly allege the existence of any conspiracy between any defendants, much less a conspiracy motivated by racial animus.  The Court thus grants the motion to dismiss, in part, and dismisses the amended complaint, in part, under Rule 12(b)(6), as to the § 1985(3) claim asserted against movants.  The Court dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to the § 1985(3) claim asserted against Edwards and Diaz.

### 3. § 1981(a) and Fourteenth Amendment equal protection claims

Savage claims that Sheriff Regalado and the four detention officers discriminated against him based on race and deprived him of equal protection of the law, in violation of § 1981(a) and the Fourteenth Amendment.  Movants do not appear to address this claim in the motion to dismiss.

"By its language, Section 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989).  To state a plausible claim under § 1981(a), a plaintiff must allege facts demonstrating:  "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race [or other

protected status]; and (3) that the discrimination interfered with a protected activity as defined in § 1981." Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101-02 (10th Cir. 2001). The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. But the Equal Protection Clause "creates no substantive rights. Instead, it embodies a general rule that States must treat cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (internal citations omitted).

To the extent Savage seeks relief under § 1983 for the alleged violation of his Fourteenth Amendment right to equal protection of the laws, he also must "show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "Allegations of discrimination based on a person's race or national origin can be sufficient to state a claim under § 1983." Ingram v. Cooper, 163 F. Supp. 3d 1133, 1139 (N.D. Okla. 2016) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985), and Ramirez v. Dep't of Corr., 222 F.3d 1238, 1243 (10th Cir. 2000)). However, "to state a claim based on the Equal Protection Clause, [a] plaintiff must sufficiently allege that [the] defendants were motivated by racial animus." Phelps, 886 F.2d at 1269. And "purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981." Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003).

Applying the rule of liberal construction, the Court finds that none of the factual allegations in the amended complaint (1) identifies Savage's race or otherwise suggests that he is a member of a protected class, (2) plausibly suggests that defendants discriminated against him on the basis of race or some other protected status or that defendants' alleged use of excessive force against him was motivated by racial animus, (3) identifies which activity protected by § 1981(a) the

defendants allegedly interfered with, or (4) suggests that defendants treated Savage differently than other similarly situated prisoners accused of threatening a fellow prisoner.  Instead, Savage's claims that defendants discriminated against him and deprived him of equal protection of the law are wholly conclusory.  See Dkt. # 37, at 6 (describing detention officers' use of excessive force and asserting "[t]his also deprives me of the equal protection of the laws in this state see: Federal Law Title 42 U.S.C. 1981(a) (c), and Due process of Law of the 14th amendment of the U.S. Constitution"); id. at 8 (asserting that the officers' use of excessive force violate several of Savage's constitutional rights and further asserting that "[t]his action by the Sheriff also constitutes discrimination because he has maintained a practice of neglect of his Lawful Duties see: 8th Amendment and [various provisions of state law]"); id. (asserting that Title II of the Civil Rights Act of 1964 and the Eighth Amendment provide protection from discrimination and asserting that the "Sheriff has deprived this right"); id. at 14 (alleging that the officers' use of excessive force "leaves space for much more than a conspiracy but not limited to: 'a criminal enterprise' and discrimination based on my race, color because [Regalado] has maintained a practice of willfully refusing to perform his required duties[.]  This action Deprives me of the equal rights under the Law (a) (c).").  The Court thus finds that Savage does not state any plausible claims under § 1981(a) or any plausible claims under § 1983 for alleged violations of his rights under the Fourteenth Amendment's Equal Protection Clause.  The Court therefore dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to the § 1981(a) and Fourteenth Amendment equal protection claims asserted against any defendants.

### 4.  Title II discrimination claims

Savage claims that Sheriff Regalado discriminated against him in violation of Savage's rights under Title II of the Civil Rights Act of 1964.  Movants do not appear to address this claim in the motion to dismiss.

The basis, if any, for Savage's Title II claim (or claims) is not entirely clear, but the sections of the Civil Rights Act of 1964 that Savage mentions are codified at 42 U.S.C. §§ 2000a through 2000a-6.  Section 2000a(a) provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).

As previously discussed, Savage does not include any allegations in the amended complaint identifying himself as a member of a particular race, color, religion, or national origin.  Dkt. # 37, generally.  Regardless, even if this Court could liberally construe his allegations as sufficient to show Savage is a member of a protected class, a county jail is not included within the definition of a "place of public accommodation."  See 42 U.S.C. § 2000a(b) (identifying covered establishments).  Moreover, the only allegation that even hints at the fact that Savage was subjected to "segregation" is the allegation that four detention officers escorted Savage to segregated housing after he was "falsely accused" of threatening another inmate.  Dkt. # 37, at 10.  Thus, on the facts alleged in the amended complaint, Savage does not state any plausible claims for relief under Title II of the Civil Rights Act of 1964.  The Court therefore dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to any Title II claims asserted against any defendant.

5. **Excessive force claims**

Savage's remaining federal claims appear to seek relief under § 1983 for the use of excessive force by the four detention officers.  Savage claims that the officers' use of excessive force violated his rights under the Fourth Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Savage also claims that Sheriff Regalado should be held liable for any damages arising from these constitutional violations because he is charged with managing and maintaining the Tulsa County Jail and hiring detention officers.  Movants contend that the facts alleged in the amended complaint are not sufficient to state any claims against Regalado, either in his individual or his official capacity, regarding the alleged use of excessive force.  Movants further contend that Dobbertin and Sanchez are entitled to qualified immunity as to any excessive force claims asserted against them in their individual capacities.

To state a plausible claim for relief under § 1983, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West, 487 U.S. at 48. Savage purports to sue each defendant in his or her individual and official capacities.  When a plaintiff sues a defendant in his or her individual capacity, the defendant "may be subject to personal liability and/or supervisory liability."  Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011).  Personal liability requires facts showing the defendant's "personal involvement in the alleged constitutional violation."  Id.  To "impose liability upon a defendant-supervisor," who did not personally participate in the alleged violation, a plaintiff must allege facts "show[ing] that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the

state of mind required to establish the alleged constitutional deprivation.'" Id. at 1164 (quoting Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).

When a plaintiff sues an individual in his or her official capacity, the suit is "essentially another way of pleading an action against the county or municipality [the official] represent[s]." Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010).  But a county "may not be held liable under § 1983 solely because it employs a tortfeasor."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).  Rather, a county may be liable only under a theory of municipal liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  To state a plausible municipal liability claim, a plaintiff must allege facts demonstrating "(1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation."  Sanders v. Glanz, 138 F. Supp. 3d 1248, 1254 (N.D. Okla. 2015); see also Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (providing examples of how a plaintiff may demonstrate the existence of a "municipal policy or custom" sufficient to support a claim under the theory of municipal liability).

### a.     Fourth, Fifth, and Eighth Amendment claims

Preliminarily, to the extent Savage asserts any excessive force claims under the Fourth, Fifth, and Eighth Amendments, he fails to state plausible claims for relief.  As this Court noted in its prior order, Savage's status as a pretrial detainee establishes that his right to be free from the use of excessive force is guaranteed by the Fourteenth Amendment's Due Process Clause, not the by the Fourth, Fifth, or Eighth Amendments.  Dkt. # 35, at 2 n.2; see Porro, 624 F.3d at 1325-26. The Court therefore dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to any Fourth, Fifth, and Eighth Amendment excessive force claims that Savage asserts against any defendants.

### b.    Official capacity claims

The Court agrees with movants that the facts alleged in the amended complaint are not sufficient to state any plausible official capacity claims against them.  Savage's allegations do not plausibly describe any circumstances that would support imposing municipal liability against Tulsa County for the alleged use of excessive force by the four detention officers.  See Bryson, 627 F.3d at 788 (providing examples of how a plaintiff may demonstrate the existence of a "municipal policy or custom" sufficient to support a § 1983 claim under the theory of municipal liability).  The Court therefore grants the motion to dismiss, in part, and dismisses the amended complaint, in part, under Rule 12(b)(6), as all claims asserted against movants in their official capacities.  The Court dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to all claims asserted against Edwards and Diaz in their official capacities.

### c.    Individual capacity claims against Sheriff Regalado

The Court also agrees with movants that the facts alleged in the amended complaint are not sufficient to state any plausible individual capacity claims against Sheriff Regalado.  None of Savage's allegations plausibly suggests that Regalado personally participated in the alleged use of excessive force.  Rather, when describing the use of excessive force, Savage alleges facts regarding the personal involvement only of the four detention officers.  And, to the extent Savage claims that Regalado should be held liable for the officers' alleged misconduct because Regalado is responsible for managing the jail and hiring detention officers, none of the allegations in the amended complaint plausibly suggests that "(1) [Regalado] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Dodds, 614 F.3d at 1199.  Rather, Savage peppers the amended

complaint with vague and conclusory allegations that Regalado violated Savage's rights, "refus[ed] to perform his required duties," and violated his "oath or affirmation to the public to always operate and or manage the Tulsa County Jail in accordance with the Laws of this state and the United States Constitution." Dkt. # 37, at 7-9, 14, 16. The Court therefore grants the motion to dismiss, in part, and dismisses the amended complaint, in part, under Rule 12(b)(6), as to any Fourteenth Amendment excessive force claim asserted against Sheriff Regalado in his individual capacity.

### d.      Individual capacity claims against detention officers

The Court finds, however, that the factual allegations in the amended complaint are sufficient, when accepted as true, to state plausible Fourteenth Amendment excessive force claims against the four detention officers—Edwards, Dobbertin, Sanchez, and Diaz—in their individual capacities. Movants seek dismissal of the Fourteenth Amendment excessive force claims, as asserted against Dobbertin and Sanchez, based on qualified immunity.

Because Savage is a pretrial detainee, the Fourteenth Amendment's due process clause "protects [him] from the use of excessive force that amounts to punishment." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). A pretrial detainee can state a plausible Fourteenth Amendment excessive force claim by alleging that "the force purposely or knowingly used against him was objectively unreasonable." Id. at 396-97. In excessive force cases "objective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. at 397 (quoting Graham, 490 U.S. at 396). Several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount

of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. The Kingsley Court noted that, under this objective standard, a pretrial detainee need not prove that an officer intended to inflict punishment. Id. at 398. "Rather, . . . a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id.

Accepting Savage's factual allegations as true, the Court finds them sufficient to state plausible claims that all four detention officers, acting under color of state law, violated Savage's Fourteenth Amendment right to be free from the use of excessive force. According to Savage, Edwards ordered Savage to place his arms behind his back for handcuffing, and Savage complied. Dkt. # 37, at 10. Edwards then escorted Savage down a hallway. Id. Savage complained that he "was in pain," and Edwards told him to "walk faster." Id. When Savage responded that he could not walk faster, Edwards "grabbed [Savage] by [his] left arm and started pulling" him, increasing Savage's left ankle pain. Id. Savage pulled his left arm away from Edwards and "begged" Edwards to stop. Id. at 10-11. In response, Edwards lifted Savage—who was handcuffed—and forcefully "slammed" him onto the "hard floor." Id. at 6, 10-11. Edwards then placed his hands around Savage's neck and began "choking" him and "cutting off [his] air supply." Id. at 6, 11. Dobbertin, Diaz, and Sanchez "came running up the hall." Id. at 11. All four detention officers "violently" lifted Savage from the floor and "dragged [him] down the hallway like an animal causing extreme unbearable pain to [his] left ankle and to both of [his] arms and wrists." Id. at 11. Savage experienced "severe pain" from being dragged while in handcuffs. Id. at 6, 11. All four detention officers then forced Savage into a holding cell, left him in "too tight" handcuffs for several hours with no ability to use the bathroom, and ignored his complaints that he "had trouble

19

breathing" and needed "medical attention." Id. at 6, 11-13, 16.  Savage alleges that during the entire incident, he did not pose a risk of harm to himself or others.  Id. at 7.  Further, according to Savage, the officers' actions caused him "severe pain," left visible bruises on his wrists, and aggravated a preexisting ankle injury.  Id. at 12-13.  On these facts, it is at least plausible that the officers' use of force was "not rationally related to a legitimate governmental objective or [was] excessive in relation to that purpose." Kingsley, 576 U.S. at 398; see also Bell Atl. Corp, 550 U.S. at 555 (explaining that in determining whether a plaintiff can withstand a motion to dismiss for failure to state a claim, a court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)," and must allow the complaint to proceed "even if it appears that recovery is very remote and unlikely" (internal quotation marks and citation omitted)).  The Court thus finds that the amended complaint contains enough facts to state plausible Fourteenth Amendment excessive force claims against Edwards, Dobbertin, Sanchez, and Diaz.

### e.    Qualified immunity

Movants contend that any Fourteenth Amendment excessive force claims asserted against Dobbertin and Sanchez, in their individual capacities, are barred by qualified immunity. "Qualified immunity protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights." Mayfield v. Bethards, 826 F.3d 1252, 1255 (10th Cir. 2016).  When a defendant asserts the defense of qualified immunity at the motion-to-dismiss stage, the defendant faces "a more challenging standard of review than would apply on summary judgment." Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004). "[A]t the motion to dismiss stage, [a court's] review is limited to the sufficiency of the allegations in the [c]omplaint." Mayfield, 826 F.3d at 1258.  Thus, a plaintiff must plausibly allege (1) that

the defendant violated the plaintiff's constitutional right and (2) that the right was clearly established at the time of the alleged conduct. Id. at 1255.

As just discussed, Savage plausibly alleges a constitutional violation based on the conduct of all four detention officers. Movants argue, however, that at the time of the alleged violation the law was "not clearly-established that their actions in transporting Mr. Savage to the holding cell constitute excessive force." Dkt. # 40, at 10. Movants specifically assert that "there is no precedential case finding comparable force, in comparable circumstances to be objectively reasonable." Id. at 11. "[A] right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mayfield, 826 F.3d at 1258 (citation omitted); accord District of Columbia v. Wesby, 538 U.S. 48, 63-64 (2018). And the Court agrees with movants that "in excessive force cases . . . it is 'sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" Id. (quoting City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021)). But a "plaintiff need not show the very act in question previously was held unlawful" to defeat an assertion of qualified immunity. Gutierrez v. Cobos, 841 F.3d 895, 900 (10th Cir. 2016). Rather, it suffices to show that existing law is "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 538 U.S. at 63. The general rule Savage seeks to apply is that force used on a pretrial detainee must be objectively unreasonable under all relevant circumstances. The more specific rule Savage seeks to apply is that a handcuffed pretrial detainee who is not resisting and not posing a safety risk to himself or others should not be slammed to the ground, strangled, and dragged down a hallway for refusing to "walk faster" when the detainee has reported that he or she is unable to walk faster due to a preexisting injury. In April 2021, it would have been "clear enough" to a reasonable detention officer that it could be unlawful to use

force against a pretrial detainee in handcuffs when the detainee posed no security threat or flight risk and there exists no apparent, much less legitimate, purpose for the use of force.  See e.g., Miller v. Glanz, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (finding a plaintiff's allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked the plaintiff while the plaintiff was handcuffed behind his back and his ankles were also restrained); Thompson v. Commonwealth of Virginia, 878 F.3d 89, 102-05 (4th Cir. 2017) (discussing cases decided before April 2010, and concluding:  "As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order.  That principle applies with particular clarity to cases such as this one, where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way.").  While Miller and Thompson both involved claims asserted by convicted prisoners under the Eight Amendment's Cruel and Unusual Punishment Clause, this clearly established law would make it even more apparent to a reasonable detention officer that the gratuitous use of force against a restrained pretrial detainee who poses no threat to himself or others could violate the Fourteenth Amendment's Due Process Clause.  See Kingsley, 576 U.S. at 400 (noting that "[t]he language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'").  The Court thus finds that Dobbertin and Sanchez are not entitled to dismissal of the Fourteenth Amendment excessive-force claims asserted against them based on qualified

immunity.[3]   The Court thus denies the motion to dismiss, in part, as to the request to dismiss the Fourteenth Amendment excessive force claims asserted against Dobbertin and Sanchez, in their individual capacities.

### f.    Rule 8(a)

Lastly, movants contend that, to the extent Savage attempts to assert claims against them that they have not identified in the motion to dismiss those additional claims should be dismissed for failure to comply with Federal Rule of Civil Procedure 8 and failure to provide adequate notice of those claims.  The Court agrees, in part.  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  And in cases like this where a plaintiff sues multiple defendants, the plaintiff "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).  "[T]hese are, very basically put, the elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits."  Id.

---

[3] "Assertions of qualified immunity are more typically addressed at the summary judgment stage, although courts will consider such assertions at the dismissal stage." Sanders, 138 F. Supp. 3d at 1266 n.11.  As this case demonstrates, "[a]sserting a qualified immunity defense at the dismissal stage subjects the defendant raising it to a more challenging standard than would apply at the summary judgment stage." Id.  This is particularly true when a plaintiff asserts a Fourteenth Amendment excessive force claim under Kingsley's objective reasonableness standard and the plaintiff alleges facts plausibly showing that the use of force was excessive in relation to a legitimate government purpose like maintaining order in a county jail or transporting a pretrial detainee to a holding cell.  As this case proceeds, the evidence ultimately may not support Savage's claim that the force used against him was objectively unreasonable under the circumstances that the detention officers confronted.  But, at this stage of the litigation, the Court finds Savage's facts, accepted as true, and the law, as it existed at the time of the alleged misconduct, permit Savage to overcome the qualified immunity defense.

As previously discussed, the Court has liberally construed the amended complaint to assert some federal claims that movants did not identify or address in the motion to dismiss. However, the Court has found that these additional federal claims must be dismissed, under § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted, as to any defendant. However, to the extent Savage intended to assert any state law claims against movants, or any other defendant, the Court agrees with movants that Savage has not provided any defendant with a short and plain statement of any state law claims and has not provided any defendant fair notice of any state law claims. The Court therefore dismisses the amended complaint, in part, under § 1915(e)(2)(B)(ii), as to any state law claims Savage attempts to assert therein.

D.      **Conclusion**

Based on the foregoing discussion, the Court concludes that Tulsa County shall be dismissed from this action, with prejudice; that the motion to dismiss shall be granted in part and denied in part, that the amended complaint shall be dismissed, in part, under Rule 12(b)(6) and § 1915(e)(2)(B)(ii); and that Savage may proceed with this action as to the Fourteenth Amendment excessive force claims asserted in the amended complaint against Edwards, Dobbertin, Sanchez, and Diaz, in their individual capacities.[4]

**IT IS THEREFORE ORDERED** that the motion to strike documents (Dkt. # 48) is **granted**, and Savage's surreplies (Dkt. ## 44, 45) are hereby **stricken**.

**IT IS FURTHER ORDERED** that Tulsa County is **dismissed** from this action with prejudice, and Tulsa County is **terminated** as a party.

---

[4] Because this order resolves the movants' motion to dismiss, the Court denies as moot movants' motion to stay (Dkt. # 49).

24

**IT IS FURTHER ORDERED** that the motion to dismiss (Dkt. # 40) is **granted in part and denied in part**, and Sheriff Regalado is **terminated** as a party.

**IT IS FURTHER ORDERED** that the amended complaint (Dkt. # 37) is **dismissed in part**, under Federal Rule of Civil Procedure 12(b)(6), as to the following claims: (1) the § 1985(3) claim asserted against Sheriff Regalado, Dobbertin, and Sanchez; (2) all official capacity claims asserted against Sheriff Regalado, Dobbertin, and Sanchez; and (3) any Fourteenth Amendment excessive force claim asserted against Sheriff Regalado in his individual capacity.

**IT IS FURTHER ORDERED** that the amended complaint (Dkt. # 37) is **dismissed in part**, under 28 U.S.C. § 1915(e)(2)(B)(ii), as to the following claims: (1) all § 1981(a) and Fourteenth Amendment equal protection claims asserted against any defendants; (2) all Title II claims asserted against any defendants; (3) all Fourth, Fifth, and Eighth Amendment excessive force claims asserted against any defendants; (4) all official capacity claims asserted against Edwards and Diaz; and (5) all state law claims Savage attempts to assert against any defendant.

**IT IS FURTHER ORDERED** that Savage **may proceed** on the Fourteenth Amendment excessive force claims, as alleged in the amended complaint, against (1) Dobbertin, in her individual capacity; (2) Edwards, in his individual capacity; (3) Sanchez, in her individual capacity; and (4) Diaz, in his official capacity.

**IT IS FURTHER ORDERED** that the motion to stay (Dkt. # 49) is **denied as moot**, and that a scheduling order shall be entered forthwith.

**DATED** this 25th day of March, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE